JOHN CHAMBLESS v. THE STATE.

No. 2979.   Decided March 23, 1904.

**1.—Aggravated Assault—Intent to Injure—Charge of the Court.**

The law requires that there must be an intent to injure, before there can be an assault and where the evidence shows that the injury would be to the feelings and that no actual battery was inflicted, the intent can not be presumed, and this question is one of fact and should be left to the jury in an instruction applicable to the facts of the case.

**2.—Same—Excessive Verdict.**

Where the evidence of the State simply showed at most an attempt of the defendant to kiss the prosecutrix nolens volens and no actual violence, a verdict assessing the highest penalty of the law was excessive.

Appeal from the County Court of Ellis.   Tried below before Hon. Lee Hawkins.

Appeal from a conviction of aggravated assault; penalty, a fine of $1000 and two years confinement in the county jail.

The opinion states the case.

*Anderson & Anderson,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an aggravated assault, and his punishment assessed at a fine of $1000 and two years confinement in the county jail; hence this appeal.

Appellant insists that, in view of the evidence, the court should have given his special requested instruction to the effect that, if defendant tried to kiss Rosa Singleton, but did so with no intention to injure her or her feelings, and had probable grounds to believe, and did believe, that such trying to kiss her would not be objected to by her, or would not be offensive to her feelings, then he would not be guilty of any offense. He contends that the court gave no charge that sufficiently safe-guarded appellant's rights under the evidence; that the only charge on this subject was that given by the court authorizing the jury to convict appellant if he made an attempt to grab or catch Rosa Singleton with his hands to kiss her and with intent to injure her, and that he did so without her consent and against her will, and that at the time he was

in such position and within such distance of her that he could have caught or grabbed or kissed her, and was prevented from doing so by her flight, etc., you will find defendant guilty. We have examined the record carefully on this crucial issue in the case; and taking the State's testimony, which on this point came solely from the prosecutrix, it may be conceded, under the authorities, she makes out a case of assault. She testified substantially that, on the occasion in question, she was at her home, doing the washing, her husband being absent in the field; that she had known appellant all her life; that he came to her house that day, and came down to where she was at the branch getting a barrel of water, and offered to help her fill the barrel. She declined his help. When she got the barrel full, she went on to the house with the water, he following along. She began washing, which was in plain view of the public road; and that she and appellant engaged in conversation; that he asked her if she could not be his friend, and she told him she had always been his friend. He then asked her how many children she had, and she told him four; and that she did not intend to have any more. He remarked, "If I was your husband you would have some more." He also said, "You don't know what a man is. If you would stay with me once, you would quit your husband." She told him she was satisfied with her husband. He then asked her if she would not go away with him, if he would come after her, some time when her husband was away from home. She refused. "He then asked me to give him some— that he had had it in his mind for some time to have intercourse with me, and he thought about it all the time; and that when he saw me at places he wanted it so bad he could hardly stand it. I told him I would not do as he wanted me to, and asked him what right he had to talk to me in that manner. I asked him if he had ever heard anything about me that made him talk like that. He said he had never heard a word of harm about me in his life. He said that he had just had it in his mind for seven years to have intercourse with me, and that he thought about it all the time. I told him if he had had it in his mind for seven years why didn't he come around sooner, and not wait until I was nearly dead, and had a girl nearly as big as her mammy, before he said anything about it. About this time some one called at the front gate, and I went to see what was wanted, going through the house. When I started back through the house, defendant was in the kitchen, getting a drink of water. When I got in the kitchen he was on one side of the table, and I on the other. He asked me to kiss him, and I told him I would die first. He started around the table after me, and I started for the door leading into the yard. Just as I got to the door he reached out his arms and grabbed at me. I jumped out of the door into the yard, and just as I got out he was in the door. He stopped there and did not come out into the yard. My children were playing around the yard— some near the door—and when I stepped out the door I could have put my hands on my oldest girl, who was eight years old." Appellant's testimony is much like that of prosecutrix, except that he attributes to her

some expressions she did not testify to. He says that when he asked her to "give him some" she replied "she had some that was good, patting it with her hands, but said it was not for me, but for the other John." That afterwards she went into the house for some purpose, and he went in the house to get a drink of water; but he did not try to kiss her. From the way she talked he thought she would be willing to kiss him; that he did not try to catch her as she went out of the door; that she did not seem to get mad; that he went out, and they continued to laugh and talk. When he left, she invited him to come back.

As shown above, the State's case as to the assault depends on the testimony of the prosecutrix Rosa Singleton, wherein she states that appellant asked her to kiss him, and on her refusal he reached his hands out as if to grab her, and she jumped out of the door. This may constitute an assault, under the authorities; that is, appellant evidently had the ability of committing a battery on prosecutrix, and if, without her consent, he attempted, by the use of force, to make her kiss him, and she fled to prevent this, then there would be an assault. If on the other hand appellant reasonably believed, under the circumstances, that prosecutrix would allow him to kiss her, and that he merely attempted to kiss her by consent and did not intend to use force to compel her to kiss him, then it would not be an assault. She had indulged in lascivious conversation with appellant. She permitted him to talk with her about having intercourse with her. According to her evidence she did not command him to desist, or demand that he leave the premises. Evidently she did not take what he had said to her as an insult. Her remark that he ought to have asked her a long time ago, before she became old, would certainly afford some ground for appellant to believe she would not be unwilling to allow him to kiss her. And if he so believed, and did not intend to force her to comply with his wishes by committing a battery on her, then, to say the least of it, he should have had an affirmative charge presenting his view of the case. The law requires that there must be an intent to injure before there can be an assault. The injury in this case would be to the feelings, and the intent can not be presumed, because no personal violence or battery was inflicted; and this intent the jury should have been permitted to pass upon under appropriate instructions. See authorities collated in White's Ann. P. C., secs. 964, 965.

In view of the evidence on which the State relies to constitute an assault, and furthermore, in view of the verdict visited on appellant—the severest penalty of the law—we do not believe there can be any question that appellant's rights were injuriously affected by the refusal of the court to give the requested special instructions. In Fuller v. State, 72 S. W. Rep., 184, it was held that the giving of a kissing sign by a male person to a female, without any attempt to commit a battery, did not evidence an assault, as there must be not only the ability but some attempt to commit a battery; and this coupled with the intent to injure.

The evidence of appellant here shows he had no purpose to seize prosecutrix and compel her to kiss him nolens volens, but from his conversation with her he believed she would agree to kiss him. This was his theory, and the court was not authorized to withhold it from the jury.

We further believe, even if it be conceded there was no question as to an assault in this case, the verdict was excessive. No violence was inflicted; the only possible injury being that to the feelings of prosecutrix.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*